723 A.2d 179

**Debra HARSTEAD, Administratrix of the Estate of Oscar R. Hammerstein, Jr., Deceased, Appellee,**

v.

**DIAMOND STATE INSURANCE COMPANY and Unigard Insurance Company.**

**Appeals of Unigard Insurance Company (160), Diamond State Insurance Company (161).**

Supreme Court of Pennsylvania.

Argued April 28, 1998.

Decided Feb. 5, 1999.

Robert S. Davis, Philadelphia, for Unigard Ins. Co.

Jonathan F. Ball, Philadelphia, for Debra Harstead.

Richard S. Marsh, Philadelphia, for Diamond State Ins. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

In this insurance coverage dispute, Appellants Unigard Insurance Company and Diamond State Insurance Company challenge the lower courts' conclusion that their policies cover the lessee of a car involved in an accident. For the reasons set forth below, we reverse.

The relevant facts are undisputed. On September 8, 1986, Oscar Hammerstein was killed in an accident when the motorcycle he was driving collided with a car driven by Susan Day. In subsequent litigation, after a non-jury trial, the trial court entered a verdict for the decedent's estate and against Day in the amount of $595,616.13. With respect to insurance, Day was driving a car that she had leased from its owner, Northern Central Bank. The lease required that Day buy a minimum of $100,000 of liability insurance for the car. Day bought such a policy from USAA Insurance Company. The USAA coverage of $100,000 was paid to the decedent's estate.

Northern Central Bank bought two other policies as the owner-lessor of the car. It bought a policy from Unigard Insurance Company, entitled "Business Auto Policy," under which it is the named insured. The policy covers cars owned and leased by the named insured for one year or more where the lease requires the lessee to buy primary insurance. In addition, Northern Central Bank bought a policy from Diamond State Insurance Company entitled "Excess Third–Party

Liability Policy" to cover losses exceeding the liability limits of the Unigard policy.

The Administratrix of the decedent's estate, Appellee Debra Harstead, brought a declaratory judgment action to determine the obligations of Unigard and Diamond State to provide insurance coverage as a result of the accident. Appellee alleged that Day was an insured under both policies and that Unigard and Diamond State are obligated to provide coverage to Day in the amount of $495,016.13—the portion of the verdict that remained unsatisfied. The parties filed motions for summary judgment and agreed that there are no genuine issues of material fact.

The trial court granted Appellee's motion for summary judgment. After reviewing the policies, the court found that the Unigard policy covers Day and held that Unigard must pay $100,000 under its policy's terms. In rejecting Unigard's position, the court found that the policy language it relied upon is unenforceable under Pennsylvania law. The trial court further held that the Diamond State policy covers Day for the amount of the judgment against her in excess of $500,000, or $95,016.13.

The Superior Court adopted the trial court's opinion and affirmed. Judge Tamilia dissented. He found that the Unigard policy is a contingency policy that applies where, at the time of an accident, the insurance required by the leasing agreement is not collectable. Since Day's primary insurance was collectable, Judge Tamilia found the Unigard policy did not apply. Judge Tamilia rejected the majority's conclusion that the policy language requiring that the insurance be uncollectable is invalid. This Court granted allowance of appeal.

Summary judgment is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 494–95, 657 A.2d 1274, 1276, *appeal denied*, 542 Pa. 670, 668 A.2d 1133 (1995). The proper construction of an insurance policy is a matter of law that a court

may resolve pursuant to a motion for summary judgment. *Id.* An appellate court may disturb a trial court's entry of summary judgment where there has been an error of law or clear abuse of discretion. *Id.*

The Unigard policy provides liability insurance for covered autos, which are defined under the policy as:

> Owned Autos Only. Only those autos you lease to a lessee under a leasing agreement of one year or more for which the lease agreement requires the lessee to provide primary insurance for you.

Unigard Policy at 1–2. Based upon this language, the trial court correctly found, and it is undisputed, that the policy covers Day's car. Day's lease agreement was for two years and she was required to provide primary insurance.

The Unigard policy also includes endorsements that change the policy. Endorsement No. 1 states that it changes Unigard's limit of liability. It sets forth in part split liability limits for bodily injury in the amount of $100,000 for each person and $300,000 for each accident. Endorsement No. 2 details the condition that lessees obtain primary liability insurance. Endorsement No. 5, entitled "Owner Only—Second Level Coverage," replaces Unigard's liability limit as shown elsewhere in the policy, or the liability limit shown in any leasing agreement of one year or more requiring a lessee to provide primary insurance for the bank, to an upper limit of $500,000. Northern Central Bank paid an additional premium for Endorsement No. 5, which specifically excludes lessees like Day from the definition of the insured.

Considering Endorsements No. 1 and No. 5 together, the trial court concluded that Endorsement No. 1 covers lessees and Northern Central Bank to the liability limit of $100,000. It found that Endorsement No. 5 extends second-level coverage to Northern Central Bank, and not lessees, to an upper limit of $500,000. Thus, the trial court held that Unigard's liability for the judgment against Day is $100,000.

Unigard relies upon Endorsement No. 4, which provides in part:

*LEASING OR RENTAL CONCERNS-CONTINGENT COVERAGE*

B. LIABILITY INSURANCE and any required no-fault insurance provided by the policy for a covered auto which is a leased auto applies subject to the following provisions:

1. a. The lessee has furnished you with satisfactory evidence of insurance to be followed by a certificate of insurance as evidence that such insurance as is required under the long term lease agreement is in effect.

b. At the time of an accident the insurance required by the leasing agreement is not collectable.

Endorsement No. 4. Unigard states that coverage for Day was never implicated because the USAA policy was collectable and was ultimately collected. The lower courts rejected this argument and found that the collectability provision is an unenforceable escape clause under Pennsylvania law.

In support of its contention that the lower courts erred, Unigard explains that its policy contains conditions that must be met before it provides liability coverage for lessees. One condition is the uncollectability of the liability policy the lessee is contractually obliged to buy. Unigard asserts that Northern Central Bank bought the Unigard policy to insure itself against claims that could be brought against it as the vehicle owner and because, under the Pennsylvania financial responsibility laws, it must insure that minimum limits of insurance cover the vehicle at all times. While the bank's lease required that the lessee buy primary insurance, Unigard asserts the bank bought additional coverage to protect against the possible uncollectability of the lessee's policy due to the lessee's failure to pay premiums or other problems. Unigard states that the uncollectability contingency is not an "other insurance" or escape clause, as defined by Pennsylvania courts, and is enforceable.

"Other insurance" clauses limit an insurer's liability where there is another policy applicable to the claimed loss. *See Continental Ins. Co. v. McKain,* 820 F.Supp. 890, 903 (E.D.Pa.1993); *Blue Anchor Overall Co. v. Pa. Lumbermens*

*Mutual Ins. Co.*, 385 Pa. 394, 398, 123 A.2d 413, 415 (1956). One type of "other insurance" clause is an escape clause, which seeks to avoid all liability where other coverage is available. *See Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 495, 657 A.2d 1274, 1276, *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995)(setting forth types of clauses used to determine liability when multiple coverage exists). Since escape clauses purport to relieve an insurer from any obligation to the insured if other coverage is available, courts view them with disfavor and will enforce the policies as if they did not exist. *Connecticut Indemnity Co. v. Cordasco,* 369 Pa.Super. 439, 444–45, 535 A.2d 631, 633–34 (1987).

In deciding whether Endorsement No. 4 is an unenforceable escape clause, we must determine whether there is multiple insurance coverage, or "other insurance," for the loss in this case. "Other insurance" exists where there are two or more insurance policies covering the same subject matter, the same interest, and against the same risk. *Blue Anchor,* 385 Pa. at 398, 123 A.2d at 415. Unigard concedes that the subject matter and interests of the USAA and the Unigard policies are the same. Both policies cover liability resulting from the use of Day's leased vehicle. Both cover Day's interest in being protected from a liability judgment.

Unigard asserts, however, that the dissent below properly found that the policies insure against different risks. We agree. Unigard correctly states that the USAA policy was directly issued to Day and insures against the risk of claims against her. In contrast, the Unigard policy states that it provides contingent coverage with respect to lessees, who are required to obtain primary insurance under the policy. The policy insures against the risk that Day's primary liability insurance may be uncollectable at the time of the accident and the bank, as owner, must bear financial responsibility. Under the applicable Motor Vehicle Financial Responsibility Law, Northern Central Bank is responsible for minimum liability limits. *See* 75 Pa.C.S. §§ 1786, 1702 (stating financial responsibility requirement). Since the risks insured against are different, the two policies do not provide multiple insurance

coverage for the same loss. Thus, Endorsement No. 4 is not an escape clause seeking to avoid liability based on the USAA policy because the USAA policy is not "other insurance." Since the contingency in Endorsement No. 4 did not occur and the USAA policy was collectable, the Unigard policy does not apply. Accordingly, we reverse the Superior Court's order affirming the trial court's grant of summary judgment for Appellee and against Unigard.[1]

■ As stated above, Northern Central Bank also bought an excess liability insurance policy from Diamond State Insurance Company, which provides coverage for a loss in excess of the liability limits of the Unigard policy. The trial court determined, and it is undisputed, that the policy provides coverage for losses exceeding $500,000, which is the liability limit found in Endorsement No. 5 of the Unigard policy. The court further held that the Diamond State policy covers lessees and Northern Central Bank. It reasoned in part that the policy uses the term "insured" and that the WHO IS INSURED provision of the Unigard policy, which includes lessees as insureds, is incorporated. As such, the trial court found that Diamond State is liable for the amount of the judgment against Day above $500,000 or $95,616.13.

Diamond State argues that its policy only provides excess coverage to Northern Central Bank and not to Day, the lessee. It contends that to the extent the policy incorporates the Unigard policy, it states that it does not incorporate inconsistent provisions. Diamond State maintains that the result below is absurd because Day was found to have the first $100,000 of coverage that the bank bought, not to have the next $400,000 of coverage that the bank bought, and then to have the excess coverage that the bank bought for losses over $500,000. We agree. The Diamond State policy provides that the named insured is the bank and that the policy provides coverage in excess of the Unigard policy limit of $500,000.

1. Unigard also argues that regardless of the enforceability of the uncollectability provision, Endorsement No. 4 contains special liability limits that apply to lessees. Given our conclusion that the uncollectability provision is valid, we need not address this argument.

Since the Unigard policy only covers the bank to an upper limit of $500,000, it follows that the excess policy applies only to the bank. Thus, we also reverse the Superior Court's order affirming the trial court's grant of summary judgment for Appellee and against Diamond State.