Donald R. MORRIS, individually, and as next fried of Dustin R. Morris, an infant, and Marvin W. Knipe, Plaintiffs,

v.

Denni J. SLACK, Defendant.

Selective Insurance Company, Third–Party Plaintiff,

v.

Penrac, Inc., a Pennsylvania Corporation, Third–Party Defendant.

Selective Insurance Company, on Behalf of the Interests of Defendant Denni J. Slack, Third–Party Plaintiff,

v.

3–D Sports Lounge, Inc., a West Virginia Corporation d/b/a Ollie's Sports Lounge, Third–Party Defendant.

Civil Action No. 3:00–CV–125.

United States District Court, N.D. West Virginia, Martinsburg Division.

Jan. 8, 2002.

Terrance L. Britt, Britt Getty Law Office, Martinsburg, WV, Bradley J. Reed, Hagerstown, MD, for Plaintiffs.

Paul B. Weiss, Martin & Seibert, LC, Martinsburg, WV, Philip C. Petty, Rose, Padden & Petty, LC, Fairmont, WV, Kevin S. Burger, Margolis Edelstein, Pittsburgh, PA, Eric J. Hulett, Steptoe & Johnson, Martinsburg, WV, for Defendants.

## MEMORANDUM ORDER AND OPINION

BROADWATER, District Judge.

The above styled matter is now before the Court for consideration of the third-party plaintiff Selective Insurance Company's Motion for Summary Judgment and the third-party defendant Penrac Inc.'s Cross–Motion for Summary Judgment. After consideration of the parties' motions and memoranda of law, as well as the oral arguments presented to the Court, the Court makes the following findings of fact and law.

## I. PROCEDURAL BACKGROUND

The present action arises from a motor vehicle collision in which it is alleged that Denni J. Slack, while intoxicated, caused the vehicle operated by him to travel left of center, colliding with the plaintiffs' vehicle. Mr. Slack was not served with process and has not appeared in this action. Instead, substituted service was made upon Selective Insurance Company ("Selective") as his statutory agent for service of process pursuant to W.Va.Code § 56–3–31(g). Selective appeared in this action on behalf of the interests of Mr. Slack.

While Selective has only appeared as a defendant in this action on behalf of Mr. Slack, it did file a third-party claim, on behalf of its own interests, against Penrac, Inc., ("Penrac") lessor of the vehicle operated by Mr. Slack at the time of the accident at issue, seeking a declaration that Penrac is obligated under the operative laws to extend liability insurance to Mr. Slack in the minimum limits mandated by the financial responsibility laws of West Virginia. Selective further sees a declaration that Penrac's coverage is primary over the coverage extended to Mr. Slack by Selective.

Selective also filed a third-party complaint, on behalf of the interests of Mr. Slack, against 3–D Sports Lounge, Inc. d/b/a/ Ollie's Sports Lounge for contribution and/or indemnity, alleging that, if Mr. Slack is found to have been intoxicated at the time of the collision, the third-party defendant shares complicity under a theory of dram shop liability.

A Mediation Settlement Agreement was reached between the plaintiffs and Selective on behalf of Denni J. Slack and Selective. The plaintiffs also reached a settlement agreement with 3–D Sports Lounge, which this Court found to be in good faith. Because the plaintiffs settled with 3–Sports Lounge, the Court dismissed the claims filed by Selective, on behalf of Mr.

Slack, against 3–D Sports Lounge. Therefore, the only remaining claims in this matter are those asserted by Selective against Penrac, which are now before the Court on summary judgment.

## II. FACTUAL BACKGROUND

On July 23, 2000, Mr. Slack leased a 2000 Dodge Stratus motor vehicle from Penrac d/b/a Enterprise Rent–A–Car, in Easton Pennsylvania, this is the vehicle he was driving at the time of the accident in this matter. This vehicle was registered in the Commonwealth of Pennsylvania. The rental contracted entered into by the parties contemplated that the vehicle would be operated within the State of West Virginia.

At the time of contracting, Mr. Slack declined to purchase supplemental property damage and liability insurance coverage ("SLP"). The rental contract provided that:

4.B. If SLP is not purchased:

Owner does not provide, extend or afford any insurance coverage to me or any passenger through this agreement. Owner's financial responsibility is expressly limited to those applicable provisions of the motor vehicle financial responsibility laws of the state in which the car is registered. Owner's financial responsibility will be excess over any valid and collectible liability insurance. This means that my insurance is primary and I agree to present a claim to my insurance company for all damages and costs. In the event that I fail to do so, I authorize Owner to present a claim to my insurance company.

The rental contract further provided that:

11. I shall defend, indemnify and hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands,

costs and expenses connected with possession or use of the car.

Penrac is a licensed self-insurer under Pennsylvania law. *See* 75 Pa. Cons.Stat § 1787. The collision at issue herein occurred within the State of West Virginia during the term of the rental contract between Penrac and Mr. Slack. On August 8, 2000, Penrac denied that it had any obligation to defend and indemnify Mr. Slack with respect to the accident at issue. The issue before the Court, therefore, is whether the rental contract compels Penrac to extend liability coverage to Mr. Slack.

### III. STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

However, the party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. *See also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)

(holding that "summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (quoting *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950))).

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265. Summary judgment is not appropriate until after the nonmoving party has had sufficient opportunity for discovery. *See Oksanen v. Page Memorial Hosp.*, 912 F.2d 73, 78 (4th Cir.1990), *superseded on rehearing*, 945 F.2d 696 (4th Cir.1991). Additionally, "[o]n summary judgment the inferences to be drawn form the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

In the instant matter, both parties agree that summary judgment is appropriate.

### IV. CHOICE OF LAW

■ The first issue the Court must address is whether it must apply West Virginia or Pennsylvania law when it construes the contract at issue. As a federal court sitting in diversity, this Court must apply the choice of law principles of the state in which it is located. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, this Court must look to West Virginia

choice of law principles to determine which state's substantive law controls.

■ The West Virginia Supreme Court held that "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the Courts of this State...." *General Elec. Co. v. Keyser,* 166 W.Va. 456, 275 S.E.2d 289 (1981). The contract at issue here was made in Pennsylvania and contemplated performance in Pennsylvania, West Virginia, New Jersey, and Maryland. Because the contract was made in Pennsylvania and because performance was also contemplated in Pennsylvania, this Court finds that Pennsylvania law controls.[1]

## V. DISCUSSION OF LAW

■ Interpretation of an insurance policy is a question of law that a court may resolve on a motion for summary judgment. *See Harstead v. Diamond State Ins. Co.,* 555 Pa. 159, 723 A.2d 179, 180 (1999). When interpreting an insurance contract, the Court must consider the parties' intent as manifested by the language of the instrument. *See Nationwide Insurance Co. v. Horace Mann Insurance Co.,* 759 A.2d 9 (P.A.Super.2000).

The contract at issue here, is a rental agreement between Penrac, doing business as Enterprise Rental Car, and Denni Slack, the insured of Selective. The contract attempts to limit Penrac's liability by saying that no coverage is extended because Mr. Slack did not purchase SLP. The contract further states that Penrac's financial responsibility is expressly limited to those applicable provisions of the motor

vehicle financial responsibility laws of the state in which the car is registered.

Pennsylvania defines financial responsibility as:

The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident.

15 Pa.C.S.A. § 1702.

Therefore, the question before the Court is whether under the rental agreement, Penrac, as a self-insurer, must provide Mr. Slack with coverage up to the amounts contained in § 1702 or whether Mr. Slack's declination of SLP terminated Penrac's financial responsibility during the pendency of the lease agreement.

There is no case on point by the Pennsylvania Supreme Court that this Court may use as binding precedent. However, in *State Farm Mutual Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 549 Pa. 518, 701 A.2d 1330 (1997), the court was faced with a substantial similar case under the 1988 MVFRL.[2] In *State Farm,* Dottie Hill was driving a car loaned to her by Kinley's Subaru while her car was being repaired. At the time, Hill was insured under a policy issued by State Farm, and Kinley was insured under a policy issued by Universal. While driving the loaned car, Hill was involved in an accident. State Farm defended Hill against the claims asserted by the other driver and settled the claim. State Farm then

---

1. The Court notes that counsel for both parties agreed in their memoranda that Pennsylvania law controls the disposition of this matter.

2. Because the MVFRL underwent substantial amendments in 1990, the court specifically cautioned the lower courts and the practicing Bar that this opinion was not meant to be controlling precedent in interpretation of the provisions of the post–1990 MVFRL.

brought a declaratory judgment action against Universal contending that, as a matter of law, Universal had a duty to defend and indemnify Hill.

In deciding the issue, the court reviewed the 1988 MVFRL and found that it did not contain an explicit dictate that permissive users who have their own automobile insurance be covered under the vehicle owner's policy. *See State Farm*, 701 A.2d at 1332. The court specifically found that § 1786 of the 1988 MVFRL, which required that every vehicle registered in the state be covered by financial responsibility, did not direct an owner to provide the minimal level of coverage set forth in § 1702, when a permissive user was covered by her own financial responsibility. *See State Farm*, 701 A.2d at 1333. The Court stated that it would be "fantastic" that a mandate that permissive, otherwise insured drivers, be covered under § 1786 would spring from the statute's silence as to whom the coverage of the owner's policy runs. *See State Farm*, 701 A.2d at 1333.

The amended § 1786 still requires that every vehicle registered under the title be covered by financial responsibility. However, the amended section does address the obligations upon termination of financial responsibility and provides that:

> In the case of a person who leases any motor vehicle from a person engaged in the business of leasing motor vehicles, the lessee shall sign a statement indicating that the required financial responsibility has been provided through the lessor or through the lessee's motor vehicle liability insurance policy coverage. The lessee shall submit the statement to the lessor.

75 Pa.C.S.A. § 1786(e)(5).

Thus, it appears that without the required statement, the lessor would be required to provide the lessee with the statutory minimum amount of financial responsibility.

Selective argues that this code section does not apply here because it falls under the subsection (e) titled "Obligations upon termination of financial responsibility." Selective argues that this code section operates only in a situation where previously existing financial responsibility upon a vehicle has been terminated, which is not a circumstance present in this case. While there is no case law from Pennsylvania interpreting this statute, the Circuit Court of Harrison County, West Virginia, in a substantially similar case, held that § 1786(e)(5) allows a lessor of motor vehicles to not provide financial responsibility if the lessee, by written statement, indicates that his or her insurance policy provides the required financial responsibility. *See Cinci v. Enterprise Rent–A–Car*, Civil Action No. 99–C–636–1. The court further held that because the defendant in that case had liability insurance coverage, Enterprise was not obligated during the period which the vehicle was subject to the rental agreement to provide financial responsibility in the legislatively mandated minimum amounts. *See id.*

■ After reading the section at issue, along with the *Cinci* case, it appears that the code section addresses the situation, were the lessor owner is required to provide financial responsibility on a motor vehicle, but upon leasing the vehicle, may "terminate" its coverage during the lease period by shifting liability coverage to that of the lessee. This is exactly the situation presented here. However, the question remains of whether the shifting of liability in this case complied with the statutory requirements.

■ It is clear that Mr. Slack had insurance coverage from Selective at the time of the rental agreement. Furthermore, the contract entered into by the parties states that if SLP is not purchased "then the owner does not provide, extend, or afford

any insurance coverage to me or any passenger through this agreement." It further limits the owner's financial responsibility to the applicable provisions of the financial responsibility laws of the state and declares that the lessee's insurance is primary and that the owner's financial responsibility will be excess. Selective argues that this clause on the back of the contract is not enough to meet the statutory requirement of § 1785(e)(5).

■ However, Mr. Slack clearly initialed the front of the contract declining supplemental liability protection and signed the bottom of the contract. It is well-established law, that a party to a contract has a duty to read it. *See generally Pruitan Manufacturing Company v. Roberts,* 33 Pa.C.C. 369 (1906). The provision relating to SPL coverage clearly states that the lessee's insurance will be primary. While this may not be the as clear a waiver as one would like, it is effective to shift liability to Mr. Slack and his primary insurer, Selective.

## VI. CONCLUSION

Based upon the following, the Court finds that the rental agreement entered into by Mr. Slack and Penrac does not compel Penrac to extend liability coverage to Mr. Slack. It is, therefore, **ORDERED** that summary judgment in favor of Penrac, Inc. be **GRANTED** and that summary judgment in favor of Selective Insurance Company be **DENIED.**

There being nothing further in this matter, the Clerk is directed to remove this matter from the active docket of the Court.

The Clerk is directed to transmit a true copy of this Order to counsel of record herein.