795 A.2d 383 (2002)
The HARLEYSVILLE INSURANCE COMPANIES, Appellant,
v.
AETNA CASUALTY AND SURETY INSURANCE COMPANY, Appellee.
Supreme Court of Pennsylvania.
Argued March 5, 2002.
Decided April 24, 2002.
*384 Scott J. Tredwell, Lauren A. Tulli, James C. Haggerty, for The Harleysville Insurance Companies.
Stanley A. Winikoff, for Aetna Casualty and Surety Insurance Company.
Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, and EAKIN, JJ.

OPINION
CAPPY, Justice.
In this insurance coverage dispute, Appellant The Harleysville Insurance Companies ("Harleysville") and Appellee Aetna Casualty and Surety Insurance Company ("Aetna") disagree as to the priority of coverage between their respective insurance policies. We granted allocatur, limited to the following issues: (1) whether the Superior Court erred in determining that a driver's personal policy of motor vehicle insurance provides coverage that is excess to the vehicle owner's personal blanket excess policy; and (2) whether the Superior Court disregarded the basic nature of primary versus excess policies of insurance. For the reasons herein, we find no error and affirm.
The facts, viewed in the light most favorable to Harleysville, as the non-moving party on a motion for summary judgment, Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 777 A.2d 418, 429 (2001), are as follows: Lawrence S. May, Jr. ("May") owned a truck that he permitted his grandson, Eric Kolesar ("Kolesar"), to use. On December 17, 1993, Kolesar allowed his friend, Troy Stefko ("Stefko"), to drive the truck while Kolesar was a passenger. Kolesar was injured when the truck left the road and struck a tree. Kolesar sued Stefko to recover for his injuries.
Three liability policies were in effect at the time of the accident. May, the vehicle owner, possessed a "Personal Auto Policy" issued by Pennland Insurance Company with liability limits of $300,000 (the "Pennland policy").[1] May also obtained a "Personal Blanket Excess Liability Policy" issued by Harleysville with liability limits of $1,000,000 (the "Harleysville policy"). Finally, the mother of the driver involved in the accident, Stefko, had a "Personal Auto Policy" issued by Aetna with liability limits of $250,000 (the "Aetna policy").
Aetna refused to participate in the litigation between Kolesar and Stefko on the basis that it had no obligation to Stefko under its policy until all coverages under the policies covering the vehicle (i.e., the Pennland and Harleysville policies) had been exhausted. As a result, Harleysville undertook the defense of Stefko. Following a settlement agreement and arbitration, Kolesar was awarded $550,000. Pennland Insurance Company, as part of the settlement, tendered its policy limits of $300,000 to Kolesar. Harleysville paid the remaining $250,000 to Kolesar, but reserved its rights against Aetna.
Harleysville filed a complaint for declaratory judgment, which it later amended, *385 seeking, inter alia, to compel Aetna to tender $250,000 in satisfaction of the award in favor of Kolesar and to share in fees and costs associated with Stefko's defense. Both parties subsequently moved for summary judgment. The trial court determined that the Pennland policy alone afforded primary insurance coverage; the Harleysville excess policy alone occupied the next, or secondary, tier of coverage; and the Aetna auto policy stood alone at the third tier of coverage. The court also determined that the sum of the underlying tort settlement of $550,000 and all defense costs could not exhaust the Harleysville policy's $1,000,000 limits. Thus, the trial court denied Harleysville's motion, granted summary judgment in favor of Aetna and dismissed the action. On appeal, the Superior Court affirmed.
Summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. P.J.S. v. Penn. State Ethics Comm'n, 555 Pa. 149, 723 A.2d 174, 176 (1999). Interpretation of an insurance policy is a question of law that a court may resolve on a motion for summary judgment. Harstead v. Diamond State Ins. Co., 555 Pa. 159, 723 A.2d 179, 180 (1999). A reviewing court may disturb the granting of summary judgment by the trial court only where there has been a clear abuse of discretion or an error of law. Id. As this case raises an error of law, our review is plenary. Phillips v. A-Best Products Co., 542 Pa. 124, 665 A.2d 1167, 1170 (1995)
The parties disagree over the interpretation of the "other insurance" clauses in the policies. "Other insurance" clauses purport to limit the insurer's liability when other insurance is applicable to the loss. Harstead, 723 A.2d at 181.
The "other insurance" clause in the Pennland policy states:
If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
Pennland policy at p. 3 (emphasis added).
The "other insurance" clause in the Aetna policy states:
If there is other applicable liability insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
Aetna policy at p. 3 (emphasis added).
Finally, the "other insurance" clause in the Harleysville policy states:
The insurance afforded by this policy shall be excess insurance over any valid and collectible primary insurance, whether or not shown in the Declarations.
If other insurance provides for payment only in excess of a stated amount of liability for each occurrence, we will pay only our share. Our share is the proportion that our limit of liability bears to the total limits of all applicable policies providing insurance on that basis.
Harleysville policy at p. 4 (emphasis added).
Harleysville contends that the Pennland and Aetna policies generally provide primary coverage, but contain "excess clauses" which allow their coverage to become excess only because of the presence of a non-owned vehicle. The Harleysville policy, *386 in contrast, is an excess insurance policy which provides excess coverage in all instances, and thus is applicable only after those other two policies have been exhausted. Thus, Harleysville reasons, the Aetna policy must be exhausted before the Harleysville policy limits are reached. In the alternative, Harleysville asserts that Aetna should share equally in the indemnity, defense fees and costs because both Harleysville and Aetna provide excess coverage.
Aetna responds that the Harleysville policy alone must occupy the second tier of coverage. Aetna claims that the Pennland and Harleysville policies were purchased as a package to provide seamless coverage for auto liability claims, beginning with the first obligation under the Pennland policy and continuing directly with the Harleysville policy. Aetna contends that the unique language of the Harleysville policy makes it excess only over "valid and collectible primary insurance" (emphasis added), and the only primary policy is the Pennland policy. Aetna notes that unlike the Harleysville policy, the Aetna policy has no limiting language, as it provides that it is excess over "any other collectible insurance". Aetna also rejects Harleysville's argument that the Aetna and Harleysville policies both provide excess insurance, given the limiting language of the Harleysville policy.
Turning to Harleysville's first argument, we note that Harleysville agrees that the general rule for interpreting insurance contracts in Pennsylvania is the following:
When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract.
Travelers Cas. & Sur. Co. v. Castegnaro, 565 Pa. 246, 772 A.2d 456, 459 (2001) (citations omitted).
Harleysville claims that in interpreting insurance policy provisions which attempt to assign priority between multiple coverages, a majority of courts look not only to the language of the policies, but also to the design of the policies. In other words, the courts discern the parties' intent by looking to the type and purpose of the coverage. See, e.g., New Hampshire Ins. Co. v. Hanover Ins. Co., 296 Ill.App.3d 701, 231 Ill.Dec. 293, 696 N.E.2d 22 (1st Dist.), appeal denied, 179 Ill.2d 588, 235 Ill.Dec. 567, 705 N.E.2d 440 (1998); Allstate Ins. Co. v. Frank B. Hall & Co., 770 P.2d 1342 (Colo.Ct.App.1989); Continental Ins. Co. v. Lexington Ins. Co., 55 Cal. App.4th 637, 64 Cal.Rptr.2d 116 (1997). Thus, Harleysville argues that its policy is a true excess policy which affords excess coverage, by design, in all circumstances, and applies only when all other available insurance is exhausted. In contrast, the Aetna policy, like the Pennland policy, was not designed to be an excess policy, but instead affords primary coverage unless other coverage happens to be available.
We would agree that the Harleysville policy does contain some of the indicia of a traditional excess liability policy. For example, the Harleysville policy is designated as a "Personal Blanket Excess Liability Policy"; it contemplates the existence of primary coverage; and the premiums appear to be relatively low ($176) in exchange for a large amount of coverage ($1,000,000). Cf. Chester Carriers, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 767 A.2d 555 (Pa.Super.2001) (analyzing indicia).
Yet the standard for interpreting insurance policies does not allow us to focus solely on the nature of the policy and *387 ignore the plain meaning of the policy terms. To the contrary, "[t]he polestar of our inquiry ....is the language of the insurance policy." Madison Construction Co. v. Harleysville Mutual Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999). Thus, we turn to an examination of the specific terms employed in each policy's "other insurance" clause.
The Harleysville policy states that it will be "excess insurance over any valid and collectible primary insurance" (emphasis added). We find that the Aetna policy is not "primary insurance", as that term is used in the Harleysville policy. We reach this conclusion because the Aetna policy, by its plain terms, provides "excess" insurance. Specifically, the Aetna policy clearly states that in cases involving a non-owned vehicle, Aetna's insurance is "excess over any other collectible insurance". Any ambiguity in the meaning of the term "primary insurance" could have been easily resolved if Harleysville had defined that term to include a personal automobile policy such as the Aetna policy, which provides excess coverage when a non-owned vehicle is involved.[2]
In contrast to the Harleysville policy, the Aetna policy does not make its coverage excess to "primary insurance." Rather, the Aetna policy more broadly provides that it affords excess insurance over "any other collectible insurance". Thus, we agree with the trial court that the Pennland policy occupies the first tier of coverage, the Harleysville policy occupies the second tier, and the Aetna policy occupies the third tier.
Harleysville relies on several cases which reviewed excess insurance policies and concluded that those policies were not triggered unless other available coverage had been exhausted. See, e.g., Chester Carriers, Inc., supra; Occidental Fire & Cas. Co. v. Brocious, 772 F.2d 47 (3d Cir. 1985); Aetna Cas. & Sur. Co. v. United Services Auto. Ass'n, 676 F.Supp. 79 (E.D.Pa.1987). In each of those cases, the courts considered both the language and the nature of the policy. However, we do not reach the same result as in those cases for the simple reason that the "other insurance" provisions in those policies did not specify that coverage was excess only over "primary insurance", as does the Harleysville policy. Given the plain terms of the policies in the case sub judice, we conclude that the limits of the Harleysville policy must be exhausted before the Aetna policy is implicated.
Harleysville is not entitled to relief on its alternative argument that each insurer must share the liability. Harleysville argues that each of the "other insurance" clauses contemplate pro-rata resolution in the event the two insurers would be held to share liability for the loss.[3] However, *388 as explained above, coverage under the Aetna policy is excess to that of the Harleysville policy. As the limits of the Harleysville policy will satisfy the underlying claim, the Aetna policy is not implicated and the parties will not share liability.
Accordingly, the order of the Superior Court is affirmed.
NOTES
[1] The Pennland policy indicates that Pennland Insurance Company is a member of the Harleysville Insurance Companies.
[2] Harleysville notes that "primary policy" is defined in the Harleysville policy as "the underlying policies shown in the Declarations." Harleysville maintains that "[t]his definition is modified, however, in the Other Insurance clause to include all underlying policies, whether or not shown in the declarations." Harleysville's brief at 22 n. 9 (emphasis in original). In point of fact, the Harleysville policy's "other insurance" provision does not include the phrase "all underlying policies", but refers only to "any valid and collectible primary insurance."
[3] The Harleysville policy provides in pertinent part: "If other insurance provides for payment only in excess of a stated amount of liability for each occurrence, we will pay only our share. Our share is the proportion that our limit of liability bears to the total limits of all applicable policies providing insurance on that basis." The Aetna policy provides in pertinent part: "If there is other applicable liability insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits."